**UNITED STATES of America, Appellee,**

**v.**

**Nicholas GESUALDI and Philip Caruso, Defendants-Appellants.**

**Nos. 70, 186, Dockets 80–1131, 81–1224.**

United States Court of Appeals, Second Circuit.

Submitted Sept. 25, 1981.

Decided Sept. 25, 1981.

Lynne F. Stewart, New York City, for defendant-appellant Gesualdi.

Jerome V. Giovinazzo, Staten Island, N. Y., for defendant-appellant Caruso.

Jane Simkin Smith, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Vivian Shevitz, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for appellee.

Before NEWMAN and KEARSE, Circuit Judges, and DALY,* District Judge.

## PER CURIAM:

Appellants were convicted after a jury trial in the Eastern District of New York (Edward R. Neaher, Judge) of possessing counterfeiting drug dies in violation of 21 U.S.C. § 843(a)(5) (1976). Drug dies or "punches" are used to engrave the top and bottom of pills. The dies appellants possessed were engraved to imprint the phrases "Rorer 714" and "Lemmon 714," which are trade names of methaqualudes, a controlled substance. Appellants contend that § 843(a)(5) does not penalize mere possession of such dies, but requires, as an element of the offense, an intent to use the dies to manufacture counterfeit controlled substances. We disagree and therefore affirm the convictions.

Section 843(a)(5) makes it unlawful "knowingly or intentionally . . . to . . . possess any punch, die, plate, stone, or other thing designed to . . . imprint . . . the . . . trade name . . . of another . . . upon any drug . . . so as to render such drug a counterfeit substance." "Counterfeit substance" is defined as "a controlled substance" that falsely purports to be the product of a manufacturer because it bears the trade name of someone other than the manufacturer. 21 U.S.C. § 802(7) (1976). We agree with the District Court that § 843(a)(5) should be read literally to punish possession of a die that is capable of rendering a drug a counterfeit substance, whether or not the possessor uses or intends to use the die for that purpose. The statute's scienter requirement is satisfied if the defendant knows that what he possesses has the requisite capability.[1] We see no reason to doubt that Congress wished to penalize not only those who intend to manufacture controlled substances bearing false trade names, but also those who possess implements suitable for falsifying trade names on such substances. The fact that appellants may have intended to put false methaqualude trade names on ordinary pills, like the antihistamines seized at their premises with the dies, does not exclude them from the statute's coverage. Congress is entitled to penalize fraud with respect to controlled substances as well as traffic in such substances.

Appellants suggest that § 843(a)(5) should be construed to require intent to manufacture a controlled substance because another provision, 21 U.S.C. § 331(i)(2) (1976), penalizes possession of devices capable of rendering a drug a counterfeit "drug," as distinguished from a counterfeit "controlled substance." However, Congress, having prescribed penalties for possession of devices to counterfeit drugs generally, was entitled to impose higher penalties under § 843(a)(5) for possession of devices capable of making ordinary drugs appear to be controlled substances. A drug falsely labeled to appear to be a methaqualude doubtlessly commands a higher street price than an ordinary drug falsely labeled to appear to be the product of a specified manufacturer.

The judgments of conviction are affirmed.

---

* The Honorable T. F. Gilroy Daly of the United States District Court for the District of Connecticut, sitting by designation.

1. Appellants make no claim that they had the authorization necessary to manufacture controlled substances lawfully, see 21 U.S.C. § 823 (1976), which would include the authority lawfully to possess dies suitable for imprinting the trade name of a controlled substance.